| | |
|---|---|
| DAVID BENJAMIN. FURRER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )      Case No. 24 CV 941 |
| THE CHARLOTTE-MECKLENBURG | ) |
| HOSPITAL AUTHORITY, ATRIUM | ) |
| HEALTH, ADVOCATE HEALTH, | ) |
| | ) |
| Defendant(s). | ) |
| | ) |
| _____ | ) |

## **VERIFIED COMPLAINT**

NOW COMES the Plaintiff, David Benjamin Furrer ("Plaintiff"), complaining of the acts of the Defendant, and respectfully alleges as follows:

## **<u>INTRODUCTION</u>**

1.     This is an action for actual and punitive damages, including attorney's fees, filed by Plaintiff for failure of the Defendant to comply with applicable provisions of Titles 11 and 15 of the United States Code.

2.     This action is further filed to preclude the frustration of the underlying purposes of the United States Bankruptcy Code.

3.     In addition, or in the alternative, this action is also filed for actual and punitive damages, including statutory damages and attorney's fees, filed by the Plaintiff for the failure of Defendant to comply with other applicable federal and North Carolina law.

4.     This action is also brought by a consumer for Defendant's violation of the North

Carolina debt Collection Act, N.C. Gen. Stat. §§ 75-50, et. Seq. ("NCDCA").

5. Specifically, Plaintiff seeks remedies as provided in the NCDCA for Defendant's failure to comply with Sections 75-54 and 75-55 of the NCDCA.

## JURISDICTION

6. The jurisdiction of this Court is conferred by 28 U.S.C. §§ 1331, 1367.

7. Venue is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

8. Plaintiff is a resident of Cabarrus County, North Carolina.

9. Defendant Charlotte-Mecklenburg Hospital Authority is a hospital network headquartered in Charlotte, North Carolina.

10. Defendant Charlotte-Mecklenburg Hospital Authority does business as Atrium Health.

11. Defendant Charlotte-Mecklenburg Hospital Authority is part of Advocate Health.

12. Defendant(s) Charlotte-Mecklenburg Hospital Authority, Atrium Health, and Advocate Health will be herein collectively called "Defendant."

13. Upon information and belief, Defendant is a "debt collector" as defined by the NCDCA, N.C. Gen. Stat. § 75-50(3).

## FACTS

14. On November 2, 2018, Plaintiff had medical treatment performed by Defendant at a location on Poplar Tent Road in Concord, North Carolina (the "November 2nd Visit).

15. Defendant charged Plaintiff several different amounts from the November 2nd Visit.

16. On November 19, 2018, sought medical treatment from Defendant at Atrium Health Sleep Medicine in Concord, North Carolina (the "November 19th Visit).

17. Defendant charged Plaintiff $430.00 for the November 19th Visit.

18. On December 20, 2018 (the "Petition Date"), Plaintiff filed a proceeding under chapter 7 of the United States Bankruptcy Code, Middle District of North Carolina Case Number 18-51293 (the "Bankruptcy Case").

19. Defendant was a creditor of the Plaintiff and was listed as a creditor in Plaintiff's Bankruptcy Case.

20. Plaintiff received a discharge under 11 U.S.C. § 727 on March 28, 2019 (the "Discharge").

21. A copy of the Order Discharging Debtor was served on Defendant on or about March 30, 2019.

22. Any debt owed by Plaintiff to Defendant as of the Petition Date was discharged in the Bankruptcy Case.

**A. Post-Petition Medical Care**

23. On May 8, 2024, Defendant telephoned Plaintiff and collected a prepayment for a sleep study scheduled for Plaintiff. Plaintiff paid Defendant $391.44 on Capital One credit card (the "Pre-Payment") (the "Capital One Card").

24. Despite the Pre-Payment charge of $391.44, Defendant's MyChart payment record showed only $257.30 in payments from Plaintiff from May 1, 2024 to August 28, 2024. A copy of the MyChart payment page is attached hereto and incorporated herein as "Exhibit A."

25. On May 10, 2024, Defendant conducted a sleep study on Plaintiff and charged him $715.35 (the "Sleep Study").

26.     On the date of the Sleep Study, Plaintiff was insured by Cigna Health and Life Insurance Company ("Cigna").

27.     Cigna provided Plaintiff with an Explanation of Benefits ("EOB") for the Sleep Study that showed the following:

$715.35     Amount Billed

$339.08     Discount

$376.27     Paid by Cigna to Defendant

$0.00       Amount Plaintiff Owed

28.     The EOB further stated "you saved $715.35 (or 100%) off the total amount billed. This is the total of your discount and what your plan paid.

29.     On or about May 21, 2024, Plaintiff telephoned Defendant and inquired about getting the $391.44 Pre-Payment refunded to him.

30.     Defendant claimed it would take thirty (30) days to determine if a refund was due.

31.     On June 17, 2024, Plaintiff telephoned Defendant again to ask for the Pre-Payment refund.

32.     During the June 17th call, Defendant claimed that Plaintiff had a credit of $180.00 on his account but that the remainder of the Pre-Payment was applied to past amounts Plaintiff owed Defendant.

33.     Defendant informed Plaintiff that some of the Pre-Payment was applied to prior amounts owed by the Plaintiff and agreed to send itemizations showing the same to Plaintiff.

34.     Defendant further stated that a credit review would be submitted on Plaintiff's account.

35.     Plaintiff advised Defendant that prior amounts owed by him were discharged in

his Bankruptcy Case.

36.     On June 17, 2024, Defendant sent Plaintiff itemizations for healthcare services for the November 2nd Visit with two different account numbers.  The itemization for account ending in xxxx0361 (the "Itemization 0361").  A copy of the Itemization 0361 is attached hereto and incorporated herein as "Exhibit B."

37.     Itemization 0361 showed payment of $594.32 to Defendant from BCBS on November 19, 2018 and $423.63 for BCBS Adjustments.

38.     Itemization 0361 also showed "Pre-Payment (Visa x9326) $66.05."

39.     The Capital One Card ends in the digits "9326."

40.     No credit for $66.05 was applied to the Capital One Card by Defendant.

41.     Upon information and belief, Defendant applied $66.05 of the Pre-Payment to the bill from the November 2nd Visit.

42.     Another itemization for the November 2nd visit is for the account ending in xxxx6413 (the "Itemization 6413").  A copy of the Itemization 6413 is attached hereto and incorporated herein as "Exhibit C."

43.     Itemization 6413 showed payment of $259.28 to Defendant from BCBS on November 15, 2018 and $795.00 for BCBS Adjustments.

44.     On or about March 21, 2022, Plaintiff paid Defendant $25.00 from his flexible medical savings account.  Plaintiff's FSA card ended in the digits "2471" (the "FSA Card").

45.     Itemization 6413 showed that on March 21, 2022, Defendant applied $11.89 of the $25.00 from the FSA Card to charges from the November 2nd Visit.

46.     Additionally, Itemization 6413 showed that on October 25, 2021, Defendant applied a payment by Plaintiff in the amount of $12.64 to charges from the November 2nd Visit.

47. On June 17, 2024, Defendant sent Plaintiff an itemization for healthcare services for the November 19th Visit, account ending in xxxx8481 ("Itemization 8481"). A copy of the Second Itemization is attached hereto and incorporated herein as "Exhibit D."

48. Itemization 8481 showed payment of $332.71 to Defendant from BCBS on November 30, 2018 and $60.32 for BCBS Adjustments.

49. Itemization 8481 showed "Pre-Payment (Visa x9326) $36.97."

50. No credit for $36.97 was applied to the Capital One Card.

51. Upon information and belief, Defendant applied $36.97 of the Pre-Payment to the bill from the November 19th Visit.

52. On or about March 21, 2022, Plaintiff paid Defendant $25.00 from his flexible medical savings account. Plaintiff's FSA card ended in the digits "2471" (the "FSA Card").

53. On June 21, 2024, Plaintiff's attorney sent Defendant a letter informing Defendant that it appeared to be retaining monies of Plaintiff that should have been refunded and applying it to discharged debts. A copy of the letter is attached hereto and incorporated herein as "Exhibit E."

54. On or about July 5, 2024, Plaintiff telephoned Defendant asking for a refund of the Pre-Payment. Defendant claimed Plaintiff was not entitled to any refund because of a dispute between Defendant and Cigna. Defendant again stated that it would request a credit review for Plaintiff's account and claimed not to see a prior credit review request.

55. On or about August 23, 2024, Plaintiff telephoned Defendant seeking a refund of the Pre-Payment. Defendant informed Plaintiff that he was not entitled to a refund or credit and would not receive the $180.00 account credit discussed on June 17, 2024.

56.     During the August 23, 2024 call, Defendant claimed it did a "charge reversal" and that Plaintiff should contact his credit card company if it was not showing on his card statement.

57.     The Capital One Card showed no deposit, charge reversal, or any other type of credit from Defendant.

58.     Plaintiff telephoned Capital One and was told that Defendant had not issued any type of credit on the account.

59.     On September 28, 2024, Defendant sent Plaintiff an itemization for the Sleep Study that showed a payment to Defendant by Cigna on June 8, 2024 for $376.27 and a Cigna adjustment from the same date for $339.08 to total the $715.35 cost of the study.

## COUNT ONE

## VIOLATION OF 11 U.S.C. § 524(i), 11 U.S.C. § 105, and CONTEMPT

60.     The allegations contained in the above paragraphs are hereby reincorporated herein by reference.

61.     The Discharge operated as an injunction against any act to collect, recover, or offset any debt as a personal liability of the Plaintiff.  *See* 11 U.S.C. § 524(a)(2).

62.     Defendant had actual knowledge of Plaintiff's bankruptcy proceeding and Discharge.

63.     Defendant continued to collect a debt that was discharged in Plaintiff's Bankruptcy Case.

64.     Defendant continued to collect a debt that was discharged in Plaintiff's Bankruptcy Case after being informed by Plaintiff's counsel that it had violated Section 524 in prior collections of the same debt.

65.     Plaintiff lost time and productivity at his job consulting making calls to Defendant

and to his undersigned counsel.

66.     Plaintiff incurred attorney fees as a result of Defendant's actions

67.     Plaintiff experienced stress and fear that he would not be refunded the Pre-Payment and that Defendant would continue to use money that should be refunded to him and apply it toward old, discharged debts.

68.     Defendant's actions caused marital discord between Plaintiff and his spouse.

69.     Defendant's actions caused Plaintiff to have to relive his daughter's childhood cancer battle.  Medical debt from the same was the primary precipitous for he and his wife's bankruptcy filing.

70.     Filing for bankruptcy relief was a traumatic event in Plaintiff's life and was related to his child's cancer treatment.

71.     Pursuant to Section 105(a), this Court has the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.

72.     The Discharge is an order of the Bankruptcy Court, and its violation is punishable by civil sanctions.  *See id*. at 187.

73.     Section 105 of the Bankruptcy Code allows this court to hold a creditor in civil contempt, and impose contempt sanctions, for violating the discharge injunction of Section 524. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019); *see also Bradley v. Fina (In re Fina)*, 550 F. App'x 150, 154 (4th Cir. 2014).

74.     Sanctions may include actual damages, attorney fees, and punitive damages.  *See id*.

75.     Emotion distress due to a creditor's actions and conduct can constitute actual damages.

76.     Plaintiff is entitled to actual damages, including for emotional distress and reasonable and necessary attorney fees incurred from Defendant's violation of his bankruptcy rights.

77.     During the discovery process, Plaintiff expects to gather evidence from Defendant that may establish a pattern and practice of Defendant willfully disregarding the Discharge Injunction by applying other payments of Plaintiff to discharged debt.

78.     Given Defendants repeat and continued violation of Section 524 despite having been informed by Plaintiff's counsel of the same, an award of punitive damages by this Court may be necessary to prevent Defendant from engaging in conduct that is in direct violation of provisions of the Bankruptcy Code.

## COUNT TWO
## VIOLATION OF N.C. GEN. STAT. Chapter 75

79.     The allegations contained in the above paragraphs are hereby reincorporated herein by reference.

80.     Plaintiff is a "consumer" under the North Carolina Debt Collection Act ("NCDCA").

81.     Plaintiff incurred a debt with Defendant for family or household purposes for medical services in 2018.

82.     The Plaintiff's obligation to Defendant is a "debt" under N.C.G.S. § 75-50(2).

83.     Defendant is a "debt collector" under N.C.G.S. § 75-50(3).

84.     Defendant committed an unfair and deceptive act by falsely representing that Plaintiff still owed Defendant a debt for the November 2nd and November 19th Visits.

85.     The debts owed by Plaintiff to Defendant for the November 2nd and 19th Visits were discharged in his Bankruptcy Case.

86.     Additionally, under N.C. Gen. Stat. § 1-52(1), the statute of limitations for the collection of medical debt in North Carolina is three (3) years.

87.     Any amounts owed to Defendant for services performed for Plaintiff in 2018 would have been uncollectible in 2021.

88.     Actions of Defendant in applying monies of Plaintiff to a debt that's collection was barred by the statute of limitations is a violation of violated the NCDCA.

89.     N.C. Gen. Stat. § 75-55(3) prohibits a debt collector from communicating with a consumer when it is notified by the consumer's attorney that said attorney represents the consumer.

90.     Defendant engaged in conversations with Plaintiff on July 5, 2024 and August 23, 2024 in which Defendant claimed Plaintiff owed it a debt in violation of N.C. Gen. Stat. §§ 75-55(3) and 75-54.

91.     Defendant's practices are "in or affecting commerce" under N.C. Gen. Stat § 75-1.1(a).

35.     "Commerce" includes "all business activities. . ." under N.C. Gen. Stat § 75-1.1(b).

92.     The collection of debts owed to Defendant for the services it provides is a normal, day-to-day activity regularly conducted by Defendant.

93.     The debt collection practices of Defendant are business activities in and affecting commerce.

94.     Defendant's unfair practices have proximately caused injury to Plaintiff.

95.     Defendant has applied at least $94.86 to charges from the November 2nd Visit that were no longer owed by Plaintiff.

96.     Defendant has applied at least $36.97 to charges from the November 19th Visit that were no longer owed by Plaintiff.

97.     Upon information and belief, Defendant has misappropriated the $391.44 Pre-Payment and refused to refund the same.

98.     Plaintiff lost time and productivity at his job making calls to Defendant and to his undersigned counsel.

99.     Plaintiff incurred attorney fees as a result of Defendant's actions.

100.    Plaintiff experienced stress and fear that he would not be refunded the Pre-Payment and that Defendant would continue to use money that should be refunded to him and apply it toward old, discharged debts.

101.    Defendant's actions caused marital discord between Plaintiff and his spouse.

102.    Defendant's actions caused Plaintiff emotional distress.

103.    Defendant's actions caused Plaintiff to have to relive his daughter's childhood cancer battle.  Medical debt from the same was the primary precipitous for he and his wife's bankruptcy filing.

104.    Filing for bankruptcy relief was a traumatic event in Plaintiff's life and was related to his child's cancer treatment.

105.    Plaintiff is entitled to actual damages against Defendant pursuant to N.C. Gen. Stat. § 75-56.

106.    Plaintiff is entitled to civil penalties against Defendant pursuant to N.C. Gen. Stat.

§ 75-56 of not less than $500.00 nor greater than $4,000.00 for each violation of this Act.

107.    Plaintiff is entitled to punitive damages in addition to statutory damages.

WHEREFORE, Plaintiff respectfully requests that this Court:

1.    Determine that Defendant's actions were in willful violation of 11 U.S.C. § 524(a)(2) and find it in contempt;

2.    Determine that Defendant's actions were in violation of 11 U.S.C. § 524(a)(2) and allow Plaintiff to recover actual damages incurred or to be incurred as a consequence of Defendant's willful violations of the discharge injunction, including but not limited to costs and attorney's fees;

3.    Determine that Plaintiff is entitled to monetary sanctions against Defendant for its contempt including but not limited to costs, attorney's fees, and civil penalties;

4.    Determine that Defendant's actions were in violation of N.C. Gen. Stat. § 75-50-55 and allow Plaintiff to recover actual damages incurred or to be incurred as a consequence of Defendant's violations, including but not limited to costs, attorney's fees, statutory damages, and civil penalties; and

5.    Award such other and further relief as is just and proper.

This the 24th day of October, 2024.

/s/ Kristen S. Nardone
KRISTEN S. NARDONE
Attorney for Plaintiff
NC Bar No. 28063

OF COUNSEL:

Nardone Law, PLLC
PO Box 1394
Concord, NC 28026-1394
(704) 784-9440

IN THE UNITED STATES COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| DAVID BENJAMIN FURRER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 24-_____ |
| THE CHARLOTTE-MECKLENBURG | ) |
| HOSPITAL AUTHORITY, ATRIUM | ) |
| HEALTH, ADVOCATE HEALTH, | ) |
| | ) |
| Defendant(s). | ) |
| | ) |

**VERIFICATION OF COMPLAINT**

I, David Benjamin Furrer, the Plaintiff in the above captioned case, hereby state, under penalty of perjury, that I have read the preceding Complaint and that the allegations as listed are true and accurate to the best of my knowledge.

_Oct 22, 2024_

Date

DAVID BENJAMIN FURRER

Sworn to and subscribed before me, this the ___ day of October, 2024.

Signature of Notary Public

JESSICA PUTT
Notary Public
Rowan County
NORTH CAROLINA

  

  

EXHIBIT A


## Billing for David B Furrer
Physician and Hospital Services for Responsible Person

 Overview      Details      **Payments**      Communications

## Past Payments

Currently viewing: All payments from 05/01/2024 to 08/28/2024 ⌄

Showing 1 out of 1 payments from 05/01/2024 to 08/28/2024

| **May 8 2024** | Pre-Payment<br>VISA x9326 collected at ATRIUM HEALTH - PRE-SERVICE DEPARTMENT | $257.30 |

Don't see the payment you are looking for? Click here for more viewing options.

 Atrium Health | MyAtriumHealth
### Atrium Health

### Responsible for Payment
 David B Furrer
Responsible Person #

7346 MILL RUINS AV SW
CONCORD NC 28025

 9


### Patients Included
 David B Furrer (You)

### Questions
 Contact customer service
Or call 844-440-6536

EXHIBIT A

Interoperability Guide   Terms and Conditions   Contact Us   High Contrast Theme     MyChart® licensed from Epic Systems Corporation© 1999 - 2024

# EXHIBIT B



David B Furrer
7346 MILL RUINS AV SW
Concord, North Carolina 28025

Account:      0361

June 17, 2024

This is an itemization of the healthcare services for:

**Patient:**         David B. Furrer                    **Admit Date:**      11/02/18
                                                       **Discharge Date**:  11/02/18

**Location:** 5641 Poplar Tent Road - AMBULATORY

**Visit Coverages:**
BCBS OOS PPO

                    **Current Account Balance:**      $0.00

**Professional Charges**

| Procedure | Bill Area | Qty | Charge Amount | Payment Amount | Adjustment Amount |
|---|---|---|---|---|---|
| **Service Date 11/2/2018** | | | | | |
| | CFM POPLAR TENT FAMILY MED [1135] | 1 | $297.00 | $123.15 | $173.85 |
| | CFM POPLAR TENT FAMILY MED [1135] | 1 | $98.00 | $81.11 | $16.89 |
| | CFM POPLAR TENT FAMILY MED [1135] | 1 | $18.00 | $0.00 | $18.00 |
| | CFM POPLAR TENT FAMILY MED [1135] | 1 | $301.00 | $248.79 | $52.21 |
| | CFM POPLAR TENT FAMILY MED [1135] | 1 | $136.00 | $123.56 | $12.44 |
| | CFM POPLAR TENT FAMILY MED [1135] | 1 | $234.00 | $83.76 | $150.24 |

**Professional Payments and Adjustments**

| Date | Description | Amount |
|---|---|---|
| 11/19/18 | BCBS Payments | -$594.32 |
| 11/04/19 | BCBS Adjustments | -$423.63 |
| | Total Insurance Payments and Adjustments | -$1,017.95 |
| 05/08/24 | Pre-Payment (Visa x9326) | -$66.05 |

**Please mail check(s) and correspondence to:**
**Atrium Health, P.O. Box 71108, Charlotte, NC 28260-1108**

If you have any questions, please call (704)512-7171.
Si desea hablar con un representante en Inglés, por favor llame al (704)512-7171, o page #1 español

Case 3:24-cv-00941-FDW-DCK   Document 1   Filed 10/24/24   Page 15 of 19
Page 1

# EXHIBIT C



David B Furrer
7346 MILL RUINS AV SW
Concord, North Carolina 28025

Account:     6413

June 17, 2024

This is an itemization of the healthcare services for:

**Patient:**            David B. Furrer              **Admit Date:**        11/02/18
                                                      **Discharge Date**:    11/02/18

**Location:**  5641 Poplar Tent Road - AMBULATORY

**Visit Coverages:**
BCBS OOS PPO

                    **Current Account Balance:**      $0.00

**Hospital Charges**

| Svc Dt | Code | Description | CPT / HCPCS Code | NDC | Qty | Amount |
|--------|------|-------------|------------------|-----|-----|--------|
| **Laboratory Pathology-General** | | | | | | |
| 11/02/18 | | | | | 1 | $147.54 |
| 11/02/18 | | | | | 1 | $147.54 |
| 11/02/18 | | | | | 1 | $147.54 |
| **Laboratory-General** | | | | | | |
| 11/02/18 | | | | | 1 | $27.48 |
| 11/02/18 | | | | | 1 | $180.09 |
| 11/02/18 | | | | | 1 | $180.09 |
| 11/02/18 | | | | | 1 | $27.48 |
| 11/02/18 | | | | | 1 | $65.71 |
| 11/02/18 | | | | | 1 | $159.62 |
| | | | | | | $1,083.09 |

**Hospital Payments and Adjustments**

| Date | Description | Amount |
|------|-------------|--------|
| 11/15/18 | BCBS Payments | -$259.28 |
| | Coinsurance: $28.81 | |

**Please mail check(s) and correspondence to:**
**Atrium Health, P.O. Box 60671, Charlotte, NC 28260-0671**

If you have any questions, please call (704)512-7171.
Si usted tiene preguntas, por favor llame al (704)512-7171, opción #2 español.

Page 1

| Date | Description | Amount |
|---|---|---|
| 11/15/18 | BCBS Adjustments | -$795.00 |
| | Total Insurance Payments and Adjustments | -$1,054.28 |
| 10/25/21 | MyChart Payment (Visa x4107) | -$12.64 |
| 03/21/22 | MyChart Payment (MasterCard x2471) | -$11.89 |
| 05/08/24 | Pre-Payment (Visa x9326) | -$4.28 |
| | Total Patient Payments and Adjustments | -$28.81 |

# EXHIBIT D



David B Furrer
7346 MILL RUINS AV SW
Concord, North Carolina 28025

Account:     8481

June 17, 2024

This is an itemization of the healthcare services for:

**Patient:**          David B. Furrer                                    **Admit Date:**          11/19/18
                                                                          **Discharge Date**:     11/19/18

**Location:**  431 Copperfield Blvd - AMBULATORY

**Visit Coverages:**
BCBS OOS PPO

                    **Current Account Balance:**     $0.00

**Professional Charges**

| Procedure | Bill Area | Qty | Charge Amount | Payment Amount | Adjustment Amount |
|---|---|---|---|---|---|
| **Service Date 11/19/2018** | | | | | |
| | CHS SLEEP MEDICINE - CONCORD [54] | 1 | $430.00 | $369.68 | $60.32 |

**Professional Payments and Adjustments**

| Date | Description | Amount |
|---|---|---|
| 11/30/18 | BCBS Payments | -$332.71 |
| 11/30/18 | BCBS Adjustments | -$60.32 |
| | Total Insurance Payments and Adjustments | -$393.03 |
| 05/08/24 | Pre-Payment (Visa x9326) | -$36.97 |

**Please mail check(s) and correspondence to:**
**Atrium Health, P.O. Box 71108, Charlotte, NC 28260-1108**

If you have any questions, please call (704)512-7171.
Si desea hablar con un representante de Atrium Health sobre esta factura, favor de llamar al (704) 512-7171, opción #2 español.
Page 1

# NARDONE LAW, PLLC

181 Church St. NE
P.O. Box 1394
Concord, North Carolina 28026-1394

17115 Kenton Dr.
Suite 204A
Cornelius, NC  28031

KRISTEN NARDONE, ESQ.

Telephone: (704) 784-9440
Website: nardonelawfirm.com

June 18, 2024

Atrium Health, Inc.
Attn: Legal Department
1111 Metropolitan Avenue, Suite 800
Charlotte, NC  28204

   RE:  David Benjamin Furrer and Marianna Furrer, MDNC Case No. 18-51293

To whom it may concern,

   I represented Mr. and Mrs. Furrer in the now discharged Chapter 7 proceeding referenced above that was filed on December 20, 2018 (the "Petition Date").

   The male Debtor owed Atrium Health for pre-petition medical services, and Atrium Health was scheduled as a creditor on his Schedules and discharged in his case.

   Upon information and belief, on several occasions post-discharge, Atrium Health has improperly withheld refund amounts that should have been remitted to the male Debtor for services rendered pre-petition. Attached are two statements showing instances where Atrium retained monies that should have been refunded but instead credited those amounts to the pre-petition bill owed Atrium.

   Retaining these surplus payments and applying them to a discharged pre-petition debt is a violation of the discharge injunction of Section 11 U.S.C. §524(a)(3) of the United States Bankruptcy Code. These funds must be turned over to the male Debtor immediately. Failure to do so may result in the Debtor seeking monetary sanctions against you, including an award of attorney fees and costs.

   If you have any questions or concerns, please do not hesitate to contact me.

   Sincerely,

   Kristen S. Nardone

cc:  Mr. and Mrs. Furrer

**Post Office Box 1394, Concord, NC 28026**
Nardonelawfirm.com